UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANA LOPEZ                                                                  CIVIL ACTION

VERSUS                                                                      NO. 05-0371

MAGNOLIA INDUSTRIAL                                                         SECTION: "A"(1)
FABRICATORS, INC., ET AL

## ORDER

Before the Court is **Defendant White Wing Inspections, Inc.'s Motion for Summary Judgment as to Plaintiff's Claims Against Defendant (Rec. Doc. 44)**. Plaintiff, Dana Lopez, and Intervenor, Louisiana Oilfield Contractors Association, oppose the motion. The motion, set with a hearing date of May 3, 2006, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED in part and DENIED in part**.

### I. BACKGROUND

Plaintiff filed suit in this Court on February 11, 2005, seeking damages for injuries he allegedly sustained when he slipped down the steps of a jack-up rig, the MOPU VIII. (Orig. Comp., ¶ 8). According to Plaintiff, the MOPU VIII was being used as a housing and storage unit for the fixed platform Eugene Island 277. (Pla. Opp., p. 1). He contends that he was injured while trying to carry out job instructions. (*Id.*). He asserts that he was instructed to bring two 2x4 boards to the diesel tank on the MOPU VIII. (*Id.*) He contends that he was not informed

and/or warned of the leaking diesel tank and/or the enormous amount of diesel he would have to pass through. (*Id.*).  As he attempted to go down the stairs on the MOPU VIII, he allegedly slipped and fell down the stairs. (*Id.*).  Plaintiff asserts that his action arises under the Admiralty and General Maritime Law of the United States and alternatively, the Jones Act, and alternatively, Section 905(b) of the Longshore and Harbor Workers Compensation Act, and alternatively, under the Outer Continental Shelf Act, and pursuant to 28 U.S.C. § 1331 and 1367 on the supplemental jurisdiction of this Court to entertain claims arising under Louisiana State law.  (*Id.*, ¶ 1).

**II. DISCUSSION**

*A. The Parties' Arguments*

The following facts are undisputed for purposes of this motion for summary judgment: Defendant White Wing Inspection, Inc. ("White Wing") was not the employer of Plaintiff. Plaintiff was employed by Magnolia Industrial Fabricators ("Magnolia") as a welder.  Plaintiff was assigned to his first off-shore assignment for Magnolia on June 25, 2004.  He lived and slept aboard the fixed platform prior to the day of the accident.  Defendant White Wing did not own or operate the "jack up" vessel known as the MOPU VIII.  It was operated by Energy Partners, Ltd. ("Energy Partners") at all times pertinent to this lawsuit.  The one thousand gallon diesel tank aboard the MOPU VIII was owned by Energy Partners, Ltd.  It was refurbished by Magnolia. The deck of the vessel on which the diesel tank was located was washed by employees of co-defendant Energy Partners.  Plaintiff was directed to assist the crane operator lifting the diesel tanks by placing wooden blocks underneath the tank by his Magnolia supervisor, Tyson

Cochran, because Mr. Cochran wanted the crane operator to finish that task and move on to another. Plaintiff's co-worker, Wade Futrell, was walking in front of him after the wooden blocks had been placed underneath the diesel tank.

Defendant White Wing contends that Magnolia had contracted with the owner of the platform, Energy Partners, to refurbish the deck plating and other areas of the platform. It further contends that Energy Partners contracted with it, White Wing, to provide quality control and quality assurance services for the refurbishment of the platform. White Wing argues that it cannot be held liable under the Jones Act, 46 U.S.C. § 688 because a cause of action under this statute can only lie against a seaman's employer, and it is undisputed that White Wing was not Plaintiff's employer at the time of the accident. Thus, it contends that Plaintiff's Jones Act claim against it should be dismissed.

White Wing next argues that Plaintiffs' claim against it under Section 905(b) of the Longshore and Harbor Workers Compensation Act (LHWCA) should be dismissed because this section provides for an action against a vessel when injury is caused by the negligence of the vessel. 33 U.S.C. §905(b). It contends that it did not own or operate *pro hac vice* the vessel on which Plaintiff sustained his injury. Thus, argues White Wing, it cannot be liable to Plaintiff under this statute.

White Wing also argues that Plaintiff's state law claim against it must fail. It acknowledges that pursuant to the Outer Continental Shelf Lands Act, 46 U.S.C. § 1331, a fixed platform is considered an artificial island, and the laws of the adjacent state, here Louisiana, apply to it. It points out, however, that Plaintiff's alleged slip and fall did not occur on the fixed

platform, but rather, it occurred on the jack-up vessel. Therefore, it argues, Plaintiff cannot have any state law claims.

Finally, White Wing contends that Plaintiff's general maritime law claim against it should be dismissed. It contends that the only possible cause of action against it under the general maritime law would be that of negligence, and Plaintiff cannot establish that it acted negligently. It contends that it had no duty to Plaintiff, the first element of a negligence claim. It contends that it was not the Plaintiff's employer, did not own the vessel, had no responsibility for the maintenance or condition of the vessel, did not own the platform, did not own the diesel tank, and it did not own the crane.

White Wing asserts that it was hired by the platform's owner to provide quality control and assurance for the repair and refurbishment of the platform. It claims that it does not provide safety services, services for the clean up of spills, or supervise the employees of other companies. White Wing contends that direct supervision of the work of the Magnolia crew was provided by Tyson Cochran, an employee of Magnolia and Plaintiff's immediate supervisor, and direct supervision of activities on the vessel was provided by Steve Comby or J.R. Perry, both employees of Energy Partners. It further contends that its employee, Dan Topham, did not order or participate in any way in the clean up operations for either the crane or the diesel tank. It argues that Topham did not order or direct Plaintiff to participate in the clean up operations on the vessel, nor did he order or direct Plaintiff to place wooden blocks under the diesel tank. Rather, White Wing contends, Topham had instructed the Magnolia crew to stay away from the clean up operations on the vessel.

4

White Wing next argues that even if the Court finds White Wing had a duty to Plaintiff, Plaintiff cannot establish the second element of a negligence claim, that White Wing breached that duty. It contends that the duty of care imposed under general maritime law is that of reasonable care under the circumstances. White Wing acknowledges that Topham was aware of a small leak in the diesel tank the evening prior to Plaintiff's alleged accident. (White Wing's Memo., p. 3) It further acknowledges that Topham was the main proponent of waiting until the morning to drain the tank, and that the leak worsened overnight. (*Id.*, p. 4-5). It nonetheless denies that it could be found negligent. It claims that at the safety meeting on the platform on the morning of the accident, Topham advised the Magnolia crew to stay away from the area of the clean up and advised everyone, including Plaintiff, that the clean up area would be slippery. White Wing argues that any duty White Wing may have had to Plaintiff was satisfied by this.

Finally, White Wing contends that if the Court finds White Wing was negligent, it is relieved of liability by the superseding negligence of others.

Plaintiff and Intervenor oppose the motion. Plaintiff argues that there are genuine issues of material fact as to whether Plaintiff qualifies as a seaman under the Jones Act, and thus suggests that his Jones Act claim should not be dismissed. Next, he concedes that he has no claim under Section 905(b) of the Longshore Harbor Workers Compensation Act against White Wing, as White Wing did not own or operate the MOPU VIII. He next contends that his state law claim should not be dismissed. He argues that under the Outer Continental Shelf Lands Act, 46 U.S.C. § 1331, a fixed platform is considered an artificial island and the laws of the adjacent state, here Louisiana, apply. He contends White Wing could be found liable in tort under

Louisiana Civil Code articles 2315 and 2316.

Plaintiff argues that there is testimony that the leak in the diesel tank was noticed the evening before the accident while it was still daylight, and it was made known to Topham, whose response was to wait until the next morning to take care of it.  Further, he contends that the diesel tank that leaked and caused the accident was originally located on the platform but had been sent in for refurbishment and later brought back on location and placed on the MOPU VIII.  Further, he asserts that the day prior to the accident, the diesel tank was moved via crane from a lower deck of the MOPU VIII to the heliport deck where the leak and accident occurred, all of which were done at the discretion and direction of Topham, who was White Wing's employee and representative on the job.  He argues that the foregoing establishes that there are genuine issues of material fact as to whether Dan Topham, of White Wing, was in charge of the operation, which included the safety of the men on the job.

Plaintiff next contends that his general maritime law claim should not be dismissed.  He argues that there is a genuine issue of material fact as to whether or not White Wing owed a duty to the Plaintiff.  He contends that although White Wing claims it had no responsibilities on and/or over the MOPU VIII, there is testimony to the contrary.  He further argues that there is testimony that White Wing, via Topham, was in charge of Magnolia employees, including Plaintiff, regardless of their location, whether on the platform or on the MOPU.  He asserts that when other persons attempted to direct the Magnolia employees, including Plaintiff, Topham would not consent to the attempts, and would direct the Magnolia employees himself.

Plaintiff also argues that there is testimony supporting a finding that the second element

of a general maritime negligence claim, breach of duty, is satisfied. He contends that the decision to wait until the morning to repair the leak was made by Topham. According to Plaintiff, the tank leak, which was minor when detected, became major overnight and caused a diesel spill. He claims that the diesel spill was the reason that there was cleaning solvent present on the deck, on which Plaintiff injured himself. He argues that the injury flows directly from White Wing's choice to wait until morning to fix the leak. Further, Plaintiff contends that there is testimony that suggests that Topham did not inform anyone of the diesel tank leak at the safety meeting on the morning of the accident.

Finally, Plaintiff contends that while there is a doctrine of superseding negligence in maritime cases, there is also the doctrine of comparative fault, and thus, White Wing should be held liable for its negligence.

Intervenor argues that White Wing's motion is a transparent attempt to shift the focus in this case away from the decisions made by its employee. It claims that discovery and depositions have shown that Topham, White Wing's inspector, was in charge of the safety and quality control of the overall project, and his actions directly contributed to the events that led to the incident. It contends that it is undisputed that Topham was in charge of inspecting any piece of equipment to be used for the job, and the diesel tank was brought on the MOPU VIII for its eventual use on the rig/platform. It argues that White Wing's safety policy requires its inspectors to control safety hazards. It argues that although Topham knew of the leak the night before the accident, it failed to take action that would have prevented the necessity for a clean up of the spill. It further contends that Topham should not have knowingly allowed Plaintiff to

enter the clean-up area before it was safe to do so. Thus, it argues that Defendant White Wing's motion is without merit as a matter of fact and law and should be denied.

White Wing has filed a reply brief, contending that in arguing that his state law claim should not be dismissed, Plaintiff has ignored the fact that his accident and all acts and/or omissions occurred on a vessel, not on the fixed platform, and thus state law, through the OCSLA, cannot be applied. It contends that maritime, not state law, applies to Plaintiff's claims, if any.

*B. Law and Analysis*

Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials,

speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### 1. Jones Act Claim

In ruling on Defendants White Wing's and Magnolia's motions for summary judgment regarding seaman status, this Court has already determined that Plaintiff is not a Jones Act seaman as a matter of law and thus dismissed his Jones Act claim(s). The court notes, however, that even if Plaintiff was a seaman, he would not have a Jones Act claim against White Wing because "only an employer can be liable under the Jones Act." *Karvelis v. Constellation Lines, S.A.*, 806 F.2d 49, 52 (2d Cir. 1986); *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860, 862 (1st Cir. 1988). It is undisputed that White Wing was not Plaintiff's employer. Thus, Plaintiff's Jones Act claim against White Wing must be dismissed.

### 2. Section 905(b) of Longshore Harbor Workers Compensation Act

Section 905(b) of the LHWCA provides in pertinent part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel. . . ." 33 U.S.C.A. § 905. Plaintiff admits that any claim he might have under Section 905(b) would not be against White Wing because it was not the owner or operator of the MOPU VIII. Thus, Plaintiff's Section 905(b) claim against White Wing must be dismissed.

### 3. State Law Claims and Admiralty Claims

The "OCSLA provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States. . . .  [I]t applies federal law to certain structures and devices on the OCS, incorporates state law into federal law on the OCS, and applies the LHWCA to certain injuries sustained by persons working on the OCS."  *Demette v. Falcon Drilling Co., Inc.,* 280 F.3d 492, 495-96 (5th Cir. 2002).

The OCSLA grants subject matter jurisdiction to the federal courts over cases and controversies "arising out of or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration, *development*, or *production* of minerals, of the subsoil of the seabed of the Outer Continental Shelf, or which involves the right to such minerals. . . ."  *Texaco Exploration and Production, Inc. v. Clyde Engineered Products Co., Inc.*, 448 F.3d 760, 768 (5th Cir. 2006) (quoting 43 U.S.C. § 1349(b)(1)(A)) (emphasis added).  The Fifth Circuit has recognized that "the OCSLA's jurisdictional grant is broad, . . ., and that the Act covers "'a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States.'"  *Id.* (quoting *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 495 (5th Cir. 2002)).  It has found that "[c]ontinental shelf platform *construction* . . . is explicitly included within the OCSLA definition of "development."  *Id.* (citing 43 U.S.C. § 1331(l)) (emphasis added).  It has also noted that the term "production" means "those activities which take place after the successful completion of any means of the removal of mineral including . . . *maintenance*. . . ."  *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (quoting 43 U.S.C. § 1331(m)) (emphasis added).

10

The Fifth Circuit has established a "but for" test to determine whether a plaintiff's injury arises out of the "development" or "production" of minerals on the Outer Continental Shelf. *Id.* In *Recar*, for example, the court held that the OCSLA granted a district court jurisdiction over a plaintiff's claim that he was injured, while suspended and swinging from a fixed platform to a nearby vessel, when the rope that carried him broke. *Id.* at 368-69. The court found that the plaintiff's "work maintaining the production platform furthered mineral development." *Id.* at 369. It determined that he would not have been injured "but for" the maintenance work he was performing and supervising on the platform, and thus his activities fell within the scope of the OCSLA. *Id.* In *Texaco Exploration*, the Fifth Circuit further explained that the "situs-based element of determining whether platform-related torts are covered by OCSLA has been extended in this Circuit." *Texaco Exploration*, 448 F.3d at 773 (citing *Recar*, 853 F.2d at 368-69).

Regarding the determination of which law to apply in OCSLA cases, the Fifth Circuit has held that "[t]hree conditions must be met before state law is adopted as surrogate federal law under [the] OCSLA: '(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with [f]ederal law.'" *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665, 668 (5th Cir. 2006).            The parties have not addressed the "but for" test in their briefs. Moreover, their arguments regarding the proper law to apply are very brief and conclusory. White Wing argues that while a fixed platform is considered an artificial island and the laws of the adjacent state, here Louisiana, apply to it, Plaintiff's accident did not occur on the platform, but rather, it

11

occurred on a vessel.  Plaintiff did not respond to White Wing's contention that state law cannot apply because the accident occurred on a vessel.  Rather, he ignores this contention, arguing, "[a]s stated by White Wing, it is hornbook law that, pursuant to the Outer Continental Shelf Lands Act, 46 U.S.C. sec. 1331, a fixed platform is considered an artificial island and the laws of the adjacent state apply."  (Pla. Opp., p. 5).

In it reply memorandum, White Wing cites *Hodgen v. Forest Oil*, 87 F.3d 1512, 1527 (5th Cir. 1996), *Hollier v. Union Texas Petroleum Corp.*, 972 F.2d 662, 664-65 (5th Cir. 1992), and *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 950 (E.D. La. 1997), contending that it is well settled that a plaintiff must be in some physical contact with the platform at the time of the injury so as to invoke Louisiana law as surrogate federal law under the OCSLA.

In *Hodgen*, an indemnity case, the plaintiff was injured when he attempted a swing rope transfer from a platform to transport vessel.  *Hodgen*, 87 F.3d at 1516.  As he was landing on the vessel, it rose quickly, and the impact resulted in severe injuries.  *Id.*  The plaintiff eventually settled all claims with all parties, leaving only issues regarding indemnity and insurance.  *Id.* at 1517.  The Fifth Circuit found that the proper test for deciding whether state law provides the rule of decision in an OCSLA case remains the three-part test quoted above – (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with [f]ederal law.'"  *Id.*

The appellants in *Hodgen* cited *Hollier*, supra, and *Smith v. Penrod Drilling Corp.*, 960

F.2d 456, 459 (5th Cir. 1992), contending that those cases "established the rule that the situs of the controversy in an OCSLA indemnity clause case is the location of the underlying accident." *Hodgen*, 87 F.3d at 1527. Further, the *Hodgen* appellants emphasized the language in *Hollier* that the OCSLA situs requirement was met in that case because the injured worker "'was in physical contact with the platform at the time of his injury.'" *Id.* The *Hodgen* court stated, "Assuming without deciding that *Hollier* and *Smith* state a rule in this circuit providing that the situs of the controversy in an OCSLA indemnity clause case is the location of the accident, we agree with the district court and find that the situs requirement is met in this case. . . . Hodgen was in physical contact with the rope, a portion of the platform, at the time of his unfortunate landing on the [boat]." *Id.*

The court further explained that even if Hodgen was not actually injured until he hit the vessel and no longer in contact with the rope, the OCSLA situs requirement would still be met. *Id.* It noted that "[i]n *Hollier*, the injured worker "was crushed, then drowned." *Id.* It stated, "[u]nless we are to believe that the *Hollier* plaintiff sank immediately to the seabed or drowned while at all times remaining in contact with the platfrom, we must presume that the drowning did not occur while the worker was in physical contact with an OCSLA situs. Thus, the *Hollier* court's holding would compel the conclusion that this circuit does not apply any physical contact rule with the rigidity that appellants would impose." *Id.*

Here, Plaintiff has not made any allegations that he had physical contact with the platform at any time during, immediately prior to, or immediately after, his alleged injury. Thus, if the Court were to consider only the cases cited by White Wing, *Hollier* and *Hodgen*, it would

13

appear that the situs element is not satisfied in this case.

The Court notes, however, that, contrary to White Wing's suggestion, an injury does not have to occur on a fixed platform for the OCSLA situs requirement to be satisfied. In *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492 (5th Cir. 2002), the Fifth Circuit found that the OCSLA applies to all of the following locations:

> (1) the subsoil and seabed of the OCS;
> (2) any artificial island, installation or other device if
>     (a) it is permanently or temporarily attached to the seabed of the OCS, and
>     (b) it has been erected on the seabed of the OCS, and
>     (c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;
> (3) any artificial island, installation, or other device if
>     (a) it is permanently attached to the seabed of the OCS, and
>     (b) it is not a ship or vessel, and
>     (c) its presence on the OCS is to transport resources from the OCS.

*Id.* at 497. The court found that a jack-up rig satisfied the situs requirement because "it was a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil." *Id.* at 498. Further, the *Demette* court distinguished the case before it from *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980), which concluded that a tender, a vessel often anchored next to drilling platforms to service the platforms and ferry workers to and from the shore, is not an OCSLA situs. *Demette*, 280 F.3d at 499. The *Demette* court noted that *Longmire* did not "involve a floating rig, let alone a jack-up rig; the 'floating' rig the opinion refers to is [a] tender, which was attached to the OCS only by an anchor." *Id.* In a footnote, the

court further commented, "[a]lthough arguably an anchor 'attache[s]' a ship to the seabed, a tender, unlike a jack-up rig, is not 'erected' on the OCS." *Id.*, n. 28.  Morever, in *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665 (5th Cir. 2006), the Fifth Circuit accepted the parties' concessions that the first element of the OCSLA choice of law test, the situs requirement, was satisfied where the plaintiff was injured on a liftboat jacked up next to a platform on the Outer Continental Shelf to provide additional workspace for the various operations at the well.  *Id.* at 667-68.

      Here, the parties have referred to the MOPU VIII as a "jack-up" vessel.  There has been no suggestion that the vessel was merely anchored to the seabed or that it was not "erected" or "temporarily attached" to it.  Rather, it was suggested during the Plaintiff's deposition that the MOPU VIII has legs.  (Pla. Depo., p. 178).  As the Court previously noted, however, the parties' briefs are inadequate regarding OCSLA jurisdiction and the proper law to apply.  Thus, the Court declines to make a determination on these issues until an appropriate motion is filed and further briefing by the parties.

      Regardless of which law applies, however, the Court finds that there are genuine issues of material fact regarding White Wing's liability, and thus, Plaintiff's case against it will not be dismissed on summary judgment.  For example, as pointed out by Plaintiff and Intervenor, there is testimony indicating that Topham was in charge of work on the MOPU and/or safety regarding the offshore operations and/or directing the Magnolia crew.  For instance, Paul Michel was asked, "Is the White Wing inspector expected to control an obvious safety hazard, a slip-and-fall hazard such as the one presented to this plaintiff on . . . the MOPU?"  (Depo. of Paul Michel, p.

133, lines 14-25). He responded, "If he sees that hazard, yes." (*Id.*, p. 134, l. 1). Jackie Ray Perry was asked, "[I]f you wanted to direct one of the Magnolia hands . . . aboard the MOPU, you had to go to Mr. Topham first?" (Depo. of Jackie Ray Perry, p. 57, l. 14-16). He responded, "Yes, yes." (*Id.*, l. 17). He was then asked, "Now was that something that Mr. Topham insisted on?" (*Id.*, l. 18-19). He responded, "Yes, because if we did it any other way, he would raise hell. . . ." (*Id.*, l. 20-21).

Further, there are genuine issues of material fact as to whether White Wing breached any duty. For example, Jackie Ray Perry testified that Topham saw the diesel leak the night prior to Mr. Lopez's accident but decided to wait until the next morning to empty the tank. (*Id.*, p. 40, l. 4-7; l. 6-14).

The Court finds that White Wing's argument that even if it was negligent, it is relieved by the superseding negligence of others is without merit. White Wing has not discussed the factors under the superseding negligence doctrine, nor has it established as a matter of law that the actions of others constituted "superseding negligence."

ACCORDINGLY,

**IT IS ORDERED** that Defendant White Wing Inspections, Inc.'s **Motion for Summary Judgment as to Plaintiff's Claims Against Defendant (Rec. Doc. 44)** is **GRANTED in part and DENIED in part**. It is granted insofar as Plaintiff's Jones Act and LHWCA Section 905(b) claims against White Wing are dismissed with prejudice. It is denied insofar as Plaintiff's state law claims and admiralty claims shall not be dismissed, as genuine issues of material fact exist

regarding White Wing's liability for plaintiff's alleged accident.  Further, the Court declines at this time to make a ruling as to OCSLA jurisdiction and the applicable law in this case, as the parties have not adequately briefed these issues.  The Court will entertain future motions regarding this issue.

New Orleans, Louisiana, this 16th day of August, 2006.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE