UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANA LOPEZ                                                             CIVIL ACTION

VERSUS                                                                 NO. 05-0371

MAGNOLIA INDUSTRIAL                                                    SECTION: "A"(1)
FABRICATORS, INC., ET AL

## ORDER

Before the Court is **Defendant White Wing Inspections, Inc.'s Motion for Summary Judgment on Plaintiff's Seaman Status and Motion to Strike Jury Demand (Rec. Doc. 45)** as well as **Defendant Magnolia Industrial Fabricators, Inc.'s Motion for Summary Judgment (Rec. Doc. 51)**. Plaintiff, Dana Lopez, opposes the motions. The motions, set with a hearing date of May 3, 2006, are before the Court on the briefs without oral argument. For the reasons that follow, **Defendant White Wing Inspections, Inc.'s Motion for Summary Judgment on Plaintiff's Seaman Status (Rec. Doc. 45) is GRANTED**. **Defendant White Wing Inspections, Inc.'s Motion to Strike Jury Demand (Rec. Doc. 45) is DENIED without prejudice**. **Defendant Magnolia Industrial Fabricators, Inc.'s Motion for Summary Judgment (Rec. Doc. 51) is GRANTED in Part and Denied in Part**. It is granted insofar as Plaintiff's Jones Act claims are dismissed with prejudice, as he is not a Jones Act seaman as a matter of law. It is denied in all other respects.

## I. BACKGROUND

Plaintiff filed suit in this Court on February 11, 2005, seeking damages for injuries he allegedly sustained when he slipped down the steps of a jack-up rig, the MOPU VIII. (Orig. Comp., ¶ 8). He contends that he was injured while trying to carry out job instructions. (*Id.*). He asserts that he was instructed to bring two 2x4 boards to the diesel tank on the MOPU III. (*Id.*) He contends that he was not informed and/or warned of the leaking diesel tank and/or the enormous amount of diesel he would have to pass through. (*Id.*). As he attempted to go down the stairs on the MOPU III, he allegedly slipped and fell down the stairs. (*Id.*). Plaintiff asserts that his action arises under the Admiralty and General Maritime Law of the United States and alternatively, the Jones Act, and alternatively, Section 905(b) of the Longshore and Harbor Workers Compensation Act, and alternatively, under the Outer Continental Shelf Act, and pursuant to 28 U.S.C. § 1331 and 1367 on the supplemental jurisdiction of this Court to entertain claims arising under Louisiana State law. (*Id.*, ¶ 1).

## II. DISCUSSION

*A. The Parties' Arguments*

Defendants White Wing and Magnolia both contend that Plaintiff is not a seaman under the Jones Act, and thus his Jones Act claim must be dismissed. White Wing further argues that the right to trial by jury is determined by the cause of action, and here, the only cause of action asserted by Plaintiff that carries with it the right to trial by jury is the Jones Act claim pursuant to 46 U.S.C. App. § 688. It contends that because Plaintiff's Jones Act claim should be dismissed, his jury request should be stricken as well. Magnolia, Plaintiff's employer at the time of the

alleged incident, argues that the only claims Plaintiff has made against it are for Jones Act negligence. Magnolia argues that because Plaintiff is not a seaman, his remedy is limited to workers' compensation under the Longshore and Harbor Workers Compensation Act, and thus his claims against Magnolia should be dismissed.

The following facts are not in dispute: Plaintiff began work for Defendant Magnolia as a welder on June 14, 2004. He worked at Magnolia's shore facility for approximately two weeks before being transferred to a fixed platform owned by Energy Partners, Ltd. known as platform 277 in Block A of the Eugene Island field. Plaintiff arrived at the fixed platform on July 25, 2004, and his alleged accident occurred on July 28, 2004. When he arrived at the platform, he slept and worked on the platform until the morning of his accident, except for limited work in installing a bridge between the platform and the jack-up vessel, the MOPU III. The jack-up vessel had its own crew which did not include Plaintiff. Plaintiff performed welding work on the platform. Magnolia, Plaintiff's employer at the time of the alleged accident, did not own or operate the jack-up vessel, the MOPU III, upon which Plaintiff was allegedly injured.

Both White Wing and Magnolia argue that Plaintiff does not satisfy the two-prong test for determining seaman status enunciated by the Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). To qualify as a seaman, (1) the Plaintiff's duties must contribute to the function of a vessel or to the accomplishment of its mission; and (2) the Plaintiff must have a connection to a vessel in navigation, or an identifiable group or fleet of vessels, which is substantial in terms of both its duration and nature. *Id.* at 369.

Defendants argue that Plaintiff did not contribute to the function of the jack-up vessel,

the MOPU VIII, or to the accomplishment of its mission. White Wing points to Plaintiff's deposition testimony, in which he stated that he did not handle any lines or any of the maneuvering of the vessel, and testified that the vessel had its own crew. (White Wing's Memo., p. 3 (citing Pla. Depo., p. 174, 175, 178)). Defendant Magnolia argues that Plaintiff spent the majority of his time either on shore or on the fixed platform as a welder. It argues that Plaintiff's assignment as a welder did not engage him in classical seaman's work because the act of welding, in and of itself, is not a traditional maritime activity.

Defendants also argue that Plaintiff did not have a connection to a vessel in navigation that was substantial in both duration and nature. White Wing points out that when Plaintiff was hired by Magnolia, he worked for approximately two weeks at its on-shore facility. He was then transferred to an offshore fixed platform on which he slept[1] and worked. It argues that his only connection to the vessel was that he was performing welding work on the bridge which connected the fixed platform to the vessel. It contends that Plaintiff is the quintessential "land-based employee who happened to be working on [a] vessel" at the time of his accident.

Magnolia argues that while Plaintiff alleges his injury occurred aboard the jack-up vessel, his time aboard it was limited to taking meals there and the limited task of placing two boards under the diesel tank and moving a smaller tank on the morning of his accident. It points to the Plaintiff's deposition, in which he stated that the jack-up was alongside the platform and was

---

[1] To clarify, the Court notes that the Plaintiff testified that he was supposed to live on the jack-up, but had a couple of temporary nights on the platform while other people were moving off the jack-up. (Pla. Depo., p. 56-57). He stated that the day he got hurt, he was supposed to be moving to the jack-up. (*Id.*, p. 57).

used "[f]or living quarters and eating, . . ., mainly for living quarters, eating and sleeping." (Magnolia's Memo., p. 5 (citing Pla. Depo., p. 57)). It also points to his testimony indicating that for the 4 days that he was aboard the platform, he was primarily engaged in cutting up deck plate and replacing it. (*Id.* (citing Pla. Depo., p. 176)).

Plaintiff has filed the same opposition to oppose both motions for summary judgment.

He contends that the threshold requirement set forth in *Chandris*, that a Plaintiff's duties must contribute to the function of a vessel or the accomplishment of its mission, is very broad, in that all who work at sea in the service of a ship are eligible for seaman status. (Pla. Opp., P. 3 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)). Next, he argues that the second requirement, a connection to a vessel in navigation that is substantial in terms of both its duration and its nature, is intended to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. (*Id.* (citing *Chandris*, 515 U.S. 347)).

Plaintiff contends that there are genuine issues of material fact regarding seaman status. He argues that when the accident happened, he was in the process of cleaning up a gas spill that occurred on the deck of the jack-up vessel. He contends that this cleanup related directly to the safety and operation of the vessel and therefore to the ship's work. Next, Plaintiff contends that there is a question of whether or not his work on the vessel is of a character that would give him seaman status under the Jones Act.

*B. Law and Analysis*

<u>Summary Judgment Standard</u>

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

<u>1.  Seaman Status</u>

The Jones Act provides a cause of action in negligence for "any seaman" injured "in the course of his employment."  46 U.S.C.A. § 688(a).  The Jones Act does not define the term "seaman." Thus, the courts have been left to determine which maritime workers are covered by

6

the Act. The determination of whether an injured worker qualifies as a Jones Act seaman is a mixed question of law and fact. *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376, 378 (5th Cir. 2000). "As such, it is generally inappropriate to dispose of a seaman status claim on summary judgment." *Id.* However, "[s]ummary judgment is mandated 'where the facts and the law will reasonably support only one conclusion.'" *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

The Supreme Court has explained that "the Jones Act was intended to protect sea-based maritime workers, who owe their allegiance to a vessel, and not land-based employees, who do not." *Chandris*, 515 U.S. at 377. As the parties have noted, the Supreme Court has established two requirements for a Plaintiff to qualify as a seaman: (1) the Plaintiff's "duties must contribute to the function of the vessel or to the accomplishment of its mission"; and (2) "he must have a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* "In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ 'a snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Id.* (quoting *Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)).

It should be noted, however, that "if a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.* at 372. Thus, where, for example, "someone who had worked for years in an employer's

7

shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel, . . . [s]uch a person should not be denied seaman status if injured shortly after reassignment." *Id.*

In *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 347 (5th Cir. 1999), the Fifth Circuit found that "[t]he facts that [the plaintiff] ate, slept, and spent time" on a jack-up boat adjacent to a platform upon which he worked did "not make him a crew member." It further explained, "Nor does the fact that [the plaintiff] may have performed minor duties aboard the [jack-up boat] transform his position as a platform worker into that of a seaman." *Id.* (citing *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1346 (5th Cir. 1980) (holding platform worker who was injured while assisting to stow anchor chain of tender vessel was not a seaman where he was not permanently assigned to that vessel)).

As previously noted, the Plaintiff acknowledged in his deposition that he was primarily engaged in cutting up deck plate on the platform and replacing it during the 4 days that he was aboard the platform. (Pla. Depo., p. 176). Also, in response to the question "[n]ow wasn't the platform itself under construction?", he responded "[t]hat's what we was working on, the platform." (*Id.*, p. 57). He also indicated that the purpose of the jack-up was "[f]or living quarters and eating, . . . mainly for living quarters, eating and sleeping." (*Id.*). He further stated that he did welding "work on the jack-up on the bridge [which connected to the platform] for a day or so." (*Id.*, p. 58).

Thus, Plaintiff himself has acknowledged that his primary duties were aboard the platform, and not the jack-up boat.  His minor duties aboard the jack-up boat do not confer seaman status upon him.

Morever, the Court reiterates that once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).  Here, the only fact mentioned by Plaintiff is that "when the accident happened, the Complainant was in the process of cleaning up a gas spill that occurred on the deck of the vessel."  (Pla. Opp., p. 3).  He contends that this cleanup related directly to the safety and operation of the vessel and therefore to the ship's work.  However, the Court has explained above that "[i]n evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ 'a snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.'" *Id.* (quoting *Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)).

Thus, the Court finds that Plaintiff is not a seaman under the Jones Act as a matter of law, and his Jones Act claims must be dismissed.  The Court notes, however, that this order is dismissing only the Jones Act claims.  Any additional claims that Plaintiff may have against Magnolia are not being dismissed through this order.

Finally, White Wing's motion to strike Plaintiff's Jury Demand will be dismissed without prejudice. White Wing has made the conclusory statement that if Plaintiff is not a Jones Act Seaman, he is not entitled to a jury trial. However, the Court notes that the law to be applied in this case has yet to be decided. The Court thus finds that it is premature to strike Plaintiff's jury demand.

**ACCORDINGLY,**

**IT IS ORDERED** that **Defendant White Wing Inspections, Inc.'s Motion for Summary Judgment on Plaintiff's Seaman Status (Rec. Doc. 45)** is **GRANTED**. Plaintiff's Jones Act claims are dismissed with prejudice, as he is not a Jones Act seaman as a matter of law.

**IT IS FURTHER ORDERED** that **Defendant White Wing Inspections, Inc.'s Motion to Strike Jury Demand (Rec. Doc. 45)** is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that **Defendant Magnolia Industrial Fabricators, Inc.'s Motion for Summary Judgment (Rec. Doc. 51)** is **GRANTED in Part and Denied in Part**. It is granted insofar as Plaintiff's Jones Act claims are dismissed with prejudice, as he is not a Jones Act seaman as a matter of law. It is denied in all other respects.

New Orleans, Louisiana, this 18th day of August, 2006.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE