UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANA LOPEZ                                                CIVIL ACTION

VERSUS                                                   NO. 05-0371

MAGNOLIA INDUSTRIAL                                       SECTION: "A"(1)
FABRICATORS, INC., ET AL

## ORDER & REASONS

Before the Court is **Defendant Energy Partners of Delaware, Ltd. "EPL" and Blake
Offshore, L.L.C., "Blake" cross-claim Motion for Summary Judgment (Rec. Doc. #80)** set
with a hearing date of August 23, 2006, and before the Court on the briefs without oral
argument.  For the reasons that follow, EPL and Blake's Motion for Summary Judgment is
**DENIED**.

## I.  BACKGROUND

On October 10, 2000, EPL and Gulf Crane entered into a Master Service Contract, or
"MSC."  The applicability of the various indemnity and defense provisions within the MSC
forms the basis of this cross-claim.  The agreement was in effect at the time of Plaintiff's
accident on July 28, 2004.

Plaintiff filed suit in this Court on February 11, 2005, seeking damages for injuries he
allegedly sustained when he slipped down the steps of the jack-up rig, MOPU VIII.  (Orig.

Comp., ¶ 8).  According to Plaintiff, the MOPU VIII was being used as a housing and storage

unit for the fixed platform Eugene Island 277.  (Pla. Memo in Opp. to Def. White Wing's Motion

for Summary Judgment, p. 1).  He contends that he was injured while trying to carry out job

instructions.  (*Id.*).  He asserts that he was instructed to bring two 2x4 boards to the diesel tank

on the MOPU VIII.  (*Id.*)  He further contends he was not informed and/or warned of the leaking

diesel tank and/or the enormous amount of diesel fuel he would have to pass through.  (*Id.*).  As

he attempted to descend the stairs on the MOPU VIII, he allegedly slipped and fell.  (*Id.*).

Plaintiff asserts that his action arises under the Admiralty and General Maritime Law of the

United States and alternatively, the Jones Act, and alternatively, Section 905(b) of the Longshore

and Harbor Workers Compensation Act, and alternatively, under the Outer Continental Shelf

Act, and pursuant to 28 U.S.C. § 1331 and 1367 of the supplemental jurisdiction of this Court to

entertain claims arising under Louisiana State law.  (*Id.*, ¶ 1).

## II. DISCUSSION

### A. EPL and Blake's Arguments

EPL and Blake move for cross-claim summary judgment on Gulf Crane's alleged

contractual duty to provide indemnity and defense under an MSC.  In support of their Motion for

Summary Judgment, EPL and Blake rely on the language of the MSC.

As a preliminary matter, EPL and Blake first assert that general maritime law governs the

obligations and relationships between the parties.  In support, they cite the choice of law

provision found in paragraph 20 of the MSC. (Def. EPL and Blake's Memo in Supp. of Motion

for Summary Judgment, p. 6).  Alternatively, if the choice of law provision does not apply, they

argue that general maritime law applies because the underlying contract involves the "furnishing of services, supplies, or accessories to a vessel." (Def. EPL and Blake's Memo in Supp. of Motion for Summary Judgment, p. 6).  EPL and Blake cite an assortment of case law which outlines that contractual indemnity agreements in maritime contracts are generally valid and enforceable.  Furthermore, they argue that the terms of the MSC are clear and unambiguous, and accordingly "Gulf Crane must provide defense and indemnification for all claims by any person to whom Company may owe a contractual indemnity."  (Def. EPL and Blake's Memo in Supp. of Motion for Summary Judgment, p. 8).

In addition to indemnity, EPL and Blake argue that Gulf Crane is required to procure and maintain insurance to cover their liability, under paragraph nine of the MSC.  Moreover, EPL and Blake argue they are also entitled to recover for all attorney's fees and expenses incurred in defending against Mr. Lopez's claims. (Def. EPL and Blake's Memo in Supp. of Motion for Summary Judgment, p. 9).

Second, EPL and Blake argue that Plaintiff's Second Supplemental and Amending Complaint naming Gulf Crane as a defendant, is clearly a "claim," as contemplated by the MSC, thus triggering Gulf Cranes duty of indemnity." (Def. EPL and Blake's Rep. Memo in Supp. of Motion for Summary Judgment, p. 2).  In support, EPL and Blake highlight the actual language of the MSC, specifically the wording "which may arise or may be claimed to have arisen out of or in connection with the performance or failure to perform the work or the provisions of this contract." (Def. EPL and Blake's  Rep. Memo in Supp. of Motion for Summary Judgment, p. 2).

Third, EPL and Blake cite deposition testimony of Dan Topham, which indicates that

3

Gulf Crane mechanic Jim Olsen's crane maintenance directly caused the crane to leak. (Def. EPL and Blake's Rep. Memo in Supp. of Motion for Summary Judgment, p. 5).

Fourth, EPL and Blake argue that the crane leak was "tracked around" the MOPU VIII. In support, they note the accident report prepared by Magnolia Industrial Fabricators, Inc., "Magnolia," as well as EPL employee Jackie Perry's deposition testimony. (Def. EPL and Blake's Rep. Memo in Supp. of Motion for Summary Judgment, p. 6).

Last, EPL and Blake argue that Gulf Crane is misleading when it refers to a "fictional" work order, and instead argue that the undisputed inspection and maintenance of the crane prior to and on the date of the accident, clearly constitutes a "performance" without the need of any additional paperwork.

## B. Gulf Crane's Arguments

First, Gulf Crane argues that there is "insufficient evidence as to whether maritime law applies." (Def. Gulf Crane's Memo in Opp. to Motion Summary Judgment, p. 5).  In support, Gulf Crane notes that the choice of law provision can be voided when it contravenes the public policy of Louisiana under Louisiana Revised Statute 9:2780. (Def. Gulf Crane's Opp. to Motion Summary Judgment, p. 5).

Second, Gulf Crane argues that the MSC has two components, the MSC itself, and any subsequently issued work orders.  Gulf Crane asserts the MSC is a "blanket agreement," and according to common custom within the industry, work orders are to supplement the agreement by describing what specific work is to be done. (Def. Gulf Crane's Opp. to Motion Summary Judgment, p. 6).  Gulf Crane contends that without these supplemental work orders, this Court

does not have competent summary judgment evidence, and thus EPL and Blake have not met their burden under Rule 56. (Def. Gulf Crane's Opp. to Motion Summary Judgment, p. 6).

Third, Gulf Crane argues that Plaintiff's accident did not arise out of the work performed by Gulf Crane.  In support, Gulf Crane notes deposition testimony that "the crane leak was completely cleaned up prior to Plaintiff's accident." (Topham Depo. pp. 59-61,71).  In addition, they note the record shows that Plaintiff fell coming down stairs from the heliport deck, not on the storage level deck where the crane leak was located. (Pla. Depo. p. 75).  They also note that Plaintiff testified that the top deck, or heliport deck, "was just diesel all over." (Pla. Depo. pp. 68-69).

## III. Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific

5

facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

<u>B. EPL and Blake's cross-Motion for Summary Judgment:</u>

*<u>Applicable Law</u>*

The first logical step in determining whether the indemnity provision of the contract is triggered, is to establish whether the applicable substantive law, allows for such an indemnity agreement.  To determine whether a contract is maritime, the Fifth Circuit Court of Appeals utilizes the two part test established in *Davis & Sons, Inc., v. Gulf Oil Corporation*.  *Davis & Sons, Inc., v. Gulf Oil Corporation*, 919 F.2d 313, 316 (5th Cir. 1990).  The first part of the test calls for an examination of the nature of the contract in light of its historical treatment in the jurisprudence. *Id*.  Under the second part, a court utilizes six fact specific questions in order to evaluate the "maritime flavor" of the case. *Id*.  The *Davis* factors to characterize a contract are: 1) the specific work order in effect at the time of injury; 2) the actual work performed by the crew assigned under the work order; 3) whether the crew assigned to work was aboard a vessel in navigable waters; 4) the extent to which the work being done related to the mission of that vessel; 5) the principal work of the injured worker and 6) the type of work the injured worker was actually doing at the time of the injury. *Id*.

6

This Court first considers the "historical treatment in the jurisprudence." *Id*.  The MSC at issue is a blanket agreement between Gulf Crane and EPL for all future work.  Although Defendant Gulf Crane argues that no specific work orders have been offered to supplement the MSC, it is clear from the facts that the work at issue is the maintenance and annual inspection on the port crane onboard MOPU VIII.

At the outset, the Court finds that the MOPU VIII, the jack-up rig where Defendant Gulf Crane's work was performed, is a vessel within the meaning of admiralty law.  Notably, "[T]his circuit has repeatedly held that special-purpose movable drilling rigs, including jack-up rigs, are vessels within the meaning of admiralty law." *Demette v. Falcon Drilling Company, Inc.,* 280 F.3d 492, 498 (5th Cir. 2002) (citing *Smith v. Penrod Drilling Corp., et al.*, 960 F.2d 456, 460 (5th Cir. 1992)).   (Def. EPL Rep. Memo in Supp. of Motion for Summary Judgment, p. 8).  Therefore, the performance at issue may properly be categorized as work on an appurtenance of a vessel.

In an analogous case, *Diamond Offshore Company v. A&B Builders Inc*, the operator of an offshore oil rig sued a repair contractor for breach of an indemnity provision of a contract. *Diamond Offshore Company v. A&B Builders Inc.*, 302 F.3d 531 (5th Cir. 2002).  The suit arose out of an injury to the repair contractor's employee as he was welding inside a pollution pan onboard a semi-submersible drilling rig. *Id*.  In rendering its decision, the Fifth Circuit noted "the historical treatment of contracts for vessel repair services supports a determination that the Master Service Contract is a maritime contract." *Id*. at 550.

In another analogous case, *Demette v. Falcon Drilling Company, Inc.,* the Fifth Circuit considered whether an MSC involving casing installation services was a maritime contract. *Demette*, 280 F.3d. 492.  Similar to our case, the maritime status of the MSC was central to the enforceablility of the indemnity provision contained within.  In ruling that the MSC was a maritime contract, the Fifth Circuit cited a broad range of cases holding that contracts involving services to jack-up rigs which are taking part in offshore drilling operations have consistently been interpreted as maritime contracts. *Id.* at 501.  Following this line of cases, this Court concludes that the historical treatment of service contracts involving jack-up rigs supports a finding that EPL and Gulf Crane's MSC is a maritime contract.

The second prong of the *Davis* test, confirms the maritime nature of the MSC at issue.  Although there is an apparent lack of any relative work order under which to evaluate the first *Davis* factor/question, it is undisputed that a Gulf Crane mechanic was onboard MOPU VIII for the purposes of servicing the crane at the time of the accident. (Def. EPL Rep. Memo in Supp. of Motion for Summary Judgment, Exh. F)  Furthermore, in analyzing the second factor/question, it is clear that on the day of the accident, Gulf Crane mechanic Jim Olsen  was either preparing to or in the process of inspecting and servicing a crane aboard MOPU VIII.

In examining the third *Davis* factor, it is clear that Jim Olsen was assigned to work aboard a vessel in navigable waters, namely the MOPU VIII.  Under the fourth factor, this Court finds that the inspection and servicing of the cranes clearly contributed to the mission of the vessel.  In examining the fifth factor, it is apparent that the injured worker was a welder stationed onboard the fixed platform, positioned alongside the MOPU VIII.  Finally, referring to the last

8

factor, at the time of the injury, Plaintiff was aiding in the cleanup of a diesel tank leak onboard

MOPU VIII.  Therefore, after applying the facts of our case to the second prong of the *Davis*

test, this Court finds that this prong also supports a finding that the EPL and Gulf Crane MSC is

a maritime contract.

It is worth noting that the EPL and Gulf Crane's MSC makes no reference to "vessels."

However, a contract need not specifically reference a vessel if it is actually maritime. *Lewis v.*

*Glendel Drilling Company*, 898 F.2d 1083, 1086 (5th Cir. 1990).  Moreover, even if the majority

of work performed by Gulf Crane was land-based under the MSC with EPL, the Fifth Circuit has

held that "this does not foreclose the application of maritime law to the work orders applicable to

some or all of the...vessel-based services as maritime obligations rendered pursuant to the final

contract for these services." *Davis & Sons*, 919 F.2d 313, 316.

Therefore, this Court holds that the MSC between EPL and Gulf Crane is a maritime

contract.  Furthermore, because the MSC is a maritime contract, maritime law applies of its own

force, and state law cannot apply as surrogate to federal law. *Diamond*, 302 F.3d 531, 549.

*Indemnity*

EPL and Blake's cross-Motion for Summary Judgment is based on the applicability of

the MSC with Gulf Crane.  The remaining question to be answered is whether the provisions of

the contract are triggered.  More specifically, whether this suit "arises or may be claimed to arise

out of the work performed by Gulf Crane."

Generally, EPL and Blake argue that due to Gulf Crane's general work presence on board

9

MOPU VIII, and Plaintiff's amended Complaint adding Gulf Crane as a defendant, the terms of the MSC are triggered.

Furthermore, in addressing Gulf Crane's opposition memorandum, EPL and Blake advance a "tracked around" theory regarding the mixture of oil leaks.  Notably, EPL and Blake cite language in the Magnolia accident report which in pertinent part reads "the combination of the two caused the deck to be slippery...[H]ydraulic oil was also mixed in with the diesel...[T]raffic through the area had spread it down the stairs into other areas." (Def. EPL and Blake's Rep. Memo in Supp. of Motion for Summary Judgment, Exh D.)  While the report does seem to suggest that hydraulic oil was mixed in with diesel, it also specifically notes that "traffic" spread the combination "down the stairs."  Given that the diesel leak was one level above the crane leak, the language in the report also seems to indicate that the diesel leak was spread down, rather than the crane hydraulic oil leak spreading up.  Furthermore, the report does not indicate with clarity which deck the hydraulic oil was on, or its place of origin.

The record is clear that there were two clean-ups going on the morning of the accident, one on the heliport deck for the diesel tank leak, and one on the storage level for the crane hydraulic oil leak.  However, the accident report is also unclear about where the "rig wash"  was being used, and moreover, doesn't distinguish between the two distinct cleanups. (Def. EPL and Blake's Rep. Memo in Supp. of Motion for Summary Judgment, Exh D.).

In opposing EPL and Blake's Motion for Summary Judgment, Gulf Crane sets forth several specific facts showing material issues as to whether this suit arises out of their work

onboard MOPU VIII.  Briefly stated, Gulf Crane notes deposition testimony which indicates the crane leak was cleaned prior to Plaintiff's accident, and that Plaintiff fell on the stairs leading down from the heliport deck, where the diesel leak was prevalent.  Of particular note to the Court, is Plaintiff's testimony that at the top deck, or heliport deck, there "was just diesel all over." (Pla. Depo. p. 68-69).

Therefore, the question as to whether this accident "arose out of or may be claimed to arise out of" Gulf Crane work, is unclear.  There is at a minimum conflicting deposition testimony as to whether the crane leak played a role in Plaintiff's accident.  In applying the summary judgment standard and drawing all justifiable inferences in favor of the non-moving party, it is apparent that Gulf Crane has established a genuine issue of material fact as to whether the indemnity and defense provisions of the MSC apply to this suit.

Accordingly;

**IT IS ORDERED** that Defendants EPL and Blake's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, Tuesday, October 3, 2006.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE